Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorneys for Objector
James H. Kirby

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE CAMBERIS and CLAUDIA CAMBERIS, individually, and on behalf of the class of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>Defendant. | Case No. 14-CV-2970 EMC<br><br>**OBJECTIONS BY JAMES H. KIRBY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date:  November 9, 2015<br>Time:  1:30 p.m.<br>Judge:  Hon. Edward M. Chen |

COMES NOW, JAMES H. KIRBY, ("Objector") Class Member to this action, by and through his undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of his counsel's intent to appear at the settlement hearing.

Objector, JAMES H. KIRBY, represents to the court that he is a Class Member, qualified to make a claim for the proposed relief as set forth in the Notice Of Class Action Settlement (Exhibit "A").

## OBJECTIONS

This lawsuit involves Ocwen's failure to report negative amortization repayments to the IRS on Form 1098 for the 2013 tax year.  Ocwen had already discovered the error and was in the process of correcting it when Plaintiffs' filed suit.  Dkt. 67-8, Pat Pexa Declaration, ¶3.  As both Brown and

1

1    Vendler concede in their declarations, this lawsuit is a follow on of a suit they filed against Bank of

2    America, and indeed much of the work of filing the complaint was no doubt made much easier because

3    of the similarity of the two lawsuits. Dkt. 67-4, Dkt. 67-1.  This lawsuit only involves one tax year that

4    is already open, so unlike the Bank of America lawsuit, no cash is being offered to compensate class

5    members who were unable to claim deductions on their tax returns.  The entire consideration being

6    offered to the class in this settlement is a $35.00 payment to assist with fees associated with filing an

7    amended return.  Specific objections are as follows:

8

9    **A. <u>The settlement unfairly favors the interests of class counsel over the class through its fee provisions.</u>**

10   Unfortunately, given the fairly small class size (15,888), this limited payment of $35 to the class

11   creates class recovery amounting to only $556,080.  As class action attorneys are generally compensated

12   with a percentage of the common fund established for the benefit of class members, the fees the

13   attorneys should expect should not amount to more than twenty-five to thirty percent of the total fund

14   established for the benefit of the class.

15   In order to support a much higher attorneys' fee award, the Motion for Final Approval and

16   Attorneys' Fees makes the inflated claim that the value of the settlement for the class is $20,076,665.

17   Dkt. 67, page 11.  To come up with this number they have created a largely theoretical evaluation of

18   what class members might conceivably save on their taxes if they file amended returns, and they have

19   even included a benefit for tax year 2014.  These numbers are mere speculation; plaintiffs are not able to

20   know with any certainty how much individual class members might save on their taxes, notwithstanding

21   that they found someone from their previous lawsuit who made some claims as to the amount she saved

22   on her taxes.  (Dkt. 67-3, Declaration of Ivey Davis in the Horn v. Bank of America litigation).  To

23   further elevate their claims regarding the value of the settlement, plaintiffs also include in their fee

24   motion an estimate that class members will save $10,310,595 off their tax returns filed in 2014.  Again,

25   this is not supported, particularly as Ocwen's representative has declared that Ocwen had discovered the

26   problem and was in the process of correcting it prior to the filing of the lawsuit.  See Decl. of Pat Pexa, ¶

27   5, Dkt. 67-8, observing "Because Ocwen made any necessary system corrections before 2014 IRS Form

28   1098s were prepared, it was not necessary to issue any amended forms for 2014."

2

Relying on this inflated evaluation of the settlement, the attorneys are requesting fees of $425,000.00. Combined with the cash benefit to the class of $556,080, the total settlement fund for purposes of determining fees is $981,080. The attorneys' fees requested are 43.3 % of that amount. The recent case of *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), *citing Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) provides guidance as to fees that are presumptively unreasonable. Justice Posner explained, "as we said in the *Redman* case, the "ratio that is relevant ... is the ratio of (1) the fee to (2) the fee plus what the class members received . . . "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." Under *Pearson*, the fees requested here are very high, exceeding Pearson's general guideline that fees should not exceed 30% of the class benefit. Moreover, in the Ninth Circuit the benchmark is 25%. Fees of 43.3% are far in excess of that benchmark.

Nor would it be appropriate to include the $55,000 in notice and class administration costs as a class benefit. *Redman* and *Pearson* are also helpful in explaining this. In *Redman*, Justice Posner described the error a court commits when it includes notice and settlement administrations costs as class benefits:

> The judge accepted the settlors' contention that the defendant's entire expenditures should be aggregated in determining the size of the settlement; it was this aggregation that reduced the award of attorneys' fees to class counsel to a respectable-seeming 25 percent. But . . . administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members. . . .

*Id.* at 630. *See also Pearson*, 772 F.3d at 781. ("administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members.").

These cases suggest that this settlement favors class counsel over absent class members through its fee provisions. The settlement also raises the red flags of a settlement that gives preferential

3

treatment to class counsel under the Ninth Circuit's decision in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir.2011).  There, the court identified three warning signs of a class action settlement that is inequitable between class counsel and the class.  Those warning signs are: (1) A disproportionate distribution of fees to counsel; (2) A clear sailing agreement; and (3) A "kicker" (i.e. a reversion of excess fees to the defendant). *Bluetooth*, 654 F.3d at 947.  The first red flag is clearly present here, as attorneys' fees of 43.3% of the settlement fund are out of line with attorneys' fees typically awarded by district courts within the Ninth Circuit.

The additional warning signs are also present.  Section 4.02 of the Settlement Agreement provides that Ocwen agrees to pay attorneys' fees of up to $425,000, or a lesser amount as awarded by the court.  This agreement not to contest the request for attorneys' fees is the second warning sign.  In addition, the means by which the attorneys' fees are paid (i.e., as a separate payment distinct from any settlement fund) means that if the attorneys do not receive the entire amount requested, the money essentially reverts back to the Defendant, as it does not go to the class.  This is an example of a "kicker" provision like that considered problematic in *Bluetooth*.  Thus in this settlement, all three warning signs of a settlement that unfairly privileges the interests of class counsel over those of the class under *Bluetooth* are present.  Under established Ninth Circuit case law, heightened scrutiny is required in this case.  "Moreover, concerns about the fairness of settlement agreements 'warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement....'" *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003), *citing Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1021 (9th Cir.1998)

**B.  The cash consideration offered to the class is inadequate.**

The $35 being offered to class members is also objectionable.  This consideration, which is intended to assist with the costs of filing an amended return, is far too low to cover the actual costs of preparing an amended return.  Filing an amended return is complex, and the $35 offered to assist in amending the returns will only cover a small portion of the cost of filing an amended tax return.  Amending a tax return is more complicated than simply filing a return, so it is likely the majority of class members will need to pay a professional to prepare their amended return.  The act of filing an amended return may raise even more issues, as class members may not realize that if they choose to

4

amend a prior year's return, they will need to correct everything on the return, which may involve making other changes. This amount is also $5 less than the amount offered in the Bank of America settlement that class counsel worked on previously – although for class members the burden of correcting the error will be the same.

### C. The service awards create a conflict of interest between class members and class representatives.

The service awards are also objectionable. Particularly where compensation to class members is so limited, the request for service awards for the representative plaintiffs of $7,500 each seems excessive. In *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) the Seventh Circuit considered various factors that should be considered in evaluating the propriety of class representive service awards. Those factors included "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Cook*, at 1016. *Cook* also pointed to other factors identified in federal cases, including "the risk to the class representative in commencing suit, both financial and otherwise," "the notoriety and personal difficulties encountered by the class representative," "the duration of the litigation", and "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."

In this case, no information has been provided to support a service award that represents many multiples of the average award class members are likely to receive from this settlement. This is another indication that the settlement is aimed at generating fees for the attorneys (and an award for their clients). Moreover, where class representatives have a large service award at stake they are likely to agree to the settlement just to get their award, and so their ability to focus principally on the fairness of the settlement to the class is compromised. Given the inherent conflict of interest raised by these service awards, they are inappropriate, and the court should not just rubber stamp this unearned award.

### D. The objection requirements impermissibly burden the objection process.

The court should also not approve a settlement that includes onerous requirements for objecting to the settlement. Section 3.05 of the Settlement Agreement describes the procedures for objecting to

5

the settlement.  It states: "To be considered valid, an objection must: . . . (v) include an address where the objector may be served."  With this requirement, counsel signal their intention to harass any well-meaning objector by serving them with a deposition subpoena and burdensome discovery.  It is improper for counsel to attempt to depose or obtain discovery from unnamed class members who merely wish to object to the settlement without a court order, but this has become a routine practice.  *See* CAL. PRAC. GUIDE, FEDERAL CIV. PROC. BEFORE TRIAL, 10:749 ("the party seeking discovery from unnamed class members is required to obtain a court order before service of interrogatories, taking of depositions, or other form of discovery is sought.").  The court should not sanction class counsel's desire to harass well-meaning objectors by approving a requirement that objectors provide an address where they may be served.  This interferes with the right to object.

## JOINDER IN OTHER OBJECTIONS

This objector joins in all other well-founded and meritorious objections.

## CONCLUSIONS

For the foregoing reasons and all others to be presented at oral argument, this objector requests that the court grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the settlement.

LAW OFFICES OF DARRELL PALMER PC

Dated:   October 2, 2015                    By: /s/ Joseph Darrell Palmer_____
                                            Joseph Darrell Palmer
                                            Attorney for Objector James H. Kirby

6

1
2

## CERTIFICATE OF SERVICE

3
4
5

I hereby certify that on October 2, 2015, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system.

6
7
8

I further certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.  The following participants will be served on today's date via US Postal Service, postage prepaid:

9
10
11
12

**CLASS COUNSEL:**
David J. Vendler, Esq.
Morris, Polich & Purdy LLP
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017

13
14
15

Michael R. Brown, Esq.
Michael R. Brown, APC
18101 Von Karman
Avenue, Suite 1900
Irvine, CA 92612

16
17
18
19
20

**OCWEN'S COUNSEL:**
Jeff E. Scott, Esq.
Jennifer L. Gray, Esq.
Greenberg Traurig LLP
1840 Century Park East
Los Angeles, CA 90067

21
22
23
24

**CLAIMS ADMINISTRATOR:**
Ocwen Loan Servicing
Claims Administrator
College Station
P.O. Box 40007
TX 77842-4007

25
26

_____/s/ Joseph Darrell Palmer_____
Joseph Darrell Palmer
Attorney for Objector

27
28