UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE L. CAMBERIS, et al.,

           Plaintiffs,

    v.

OCWEN LOAN SERVICING LLC,

           Defendant.

Case No.  14-cv-02970-EMC

**ORDER GRANTING PLAINTIFFS'
MOTION FOR FINAL APPROVAL**

Docket No. 67

## I.      <u>INTRODUCTION</u>

Plaintiffs George and Claudia Camberis filed the instant class action suit against Defendant Ocwen Financial Corporation on June 26, 2014.  Plaintiffs alleged that Defendant failed to report Negative Amortization mortgage interest that was actually paid to it by Class Members on the IRS Forms 1098 it issued the for the tax-year 2013.  Docket No. 1 (Compl.) at ¶¶ 2, 4.  This allegedly resulted in Class Members losing substantial tax deductions for that year.  *Id.* at ¶ 5.

The parties eventually settled the case.  On August 11, 2015, the Court granted preliminary approval of the case, including certification of a temporary settlement class, appointing class counsel, directing notice, and setting a fairness hearing.  Docket No. 62.  Plaintiffs' motion for final approval of the class action settlement, class counsel's fees, and an incentive award came on for hearing before the Court on November 9, 2015.  For the reasons stated at the hearing and below, the Court **GRANTS** Plaintiffs' motion.

## II.      <u>BACKGROUND</u>

A.    <u>Procedural History</u>

Plaintiffs filed suit on June 26, 2014, seeking the following relief: (1) changing Defendant's Form 1098 reporting practices to include payments of Negative Amortization; (2)

requiring Defendant to issue corrected Forms 1098 to include payment of Negative Amortization; and (3) seeking damages to class members to compensate for the time and expenses of amending prior tax returns to correct Defendant's error.  Compl. at 29-30.  After the suit was filed, Defendant filed a motion to dismiss Plaintiffs' complaint.  Docket No. 19.  Following the completion of briefing on the motion to dismiss, settlement discussions between the parties began. Docket No. 67-4 (Brown Dec.) at ¶ 11.

The parties participated in formal mediation before Judge John Leo Wagner on February 6, 2015.  Docket No. 67-6 (Wagner Dec.) at ¶ 6.  The parties submitted extensive supplemental briefs addressing two cases that were decided in the days immediately prior to mediation.  *Id.* After the February 6, 2015 mediation concluded with no settlement, the parties continued with their settlement discussions, reaching a tentative agreement on March 17, 2015.  *Id.* at ¶ 9.

B.     Terms of Proposed Settlement

Defendant has agreed to issue corrected Forms 1098 for the year 2013 to all Class Members, which will report the proper amount of mortgage interest they paid in 2013, including repayments of Negative Amortization.  *See* Docket No. 50-2 (Settlement Agreement) at § 2.01. Defendant will also pay each Class Member $35 for every amended Form 1098 that Defendant files for that Class Member to help defray the cost of filing amended tax returns.  *Id.* at § 2.02.  In addition, Defendant has made a system-wide correction so that repayments of Negative Amortization will be properly reported in future years, which included the 2014 tax-year.  *Id.* at § 2.05.  Finally, Defendant has agreed to pay the class counsel's fees and costs, an incentive award to named Plaintiffs, and all costs of class administration.  *Id.* at §§ 3.07, 4.02, 4.03.

The expected total economic benefit includes:

(1)     Cash: $556,080 ($35.00 multiplied by 15,888, the number of corrected Forms 1098 that Defendant has sent to Class Members pursuant to the Settlement)

(2)     Increased tax-deductions for tax-year 2013 from corrected Forms 1098: $9,154,990

(3)     Increased tax-deductions for tax-year 2014 from system-wide correction: $10,310,595

(4)     Class counsel fees and costs: $425,000

2

1    (5)    Class administration costs: $55,000

2    (6)    Class representative enhancement award: $7,500 ($3,750 for each named Plaintiff)

3    These amounts do not include the expected increased tax-deductions for tax-years after

4    2014.

5    ## III.    DISCUSSION

6    In determining whether a settlement agreement is fair, adequate, and reasonable to all

7    concerned, a court typically considers the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense,
> complexity, and likely duration of further litigation; (3) the risk of
> maintaining class action status throughout the trial; (4) the amount
> offered in settlement; (5) the extent of discovery completed and the
> stage of the proceedings; (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and (8) the reaction
> of the class members of the proposed settlement.

12   *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

13   When the settlement agreement is negotiated prior to formal class certification, the Ninth

14   Circuit has found that "consideration of these eight *Churchill* factors alone is not enough to

15   survive appellate review."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th

16   Cir. 2011).  This is because:

> [p]rior to formal class certification, there is an even greater potential
> for a breach of fiduciary duty owed the class during settlement.
> Accordingly, such agreements must with-stand an even higher level
> of scrutiny for evidence of collusion or other conflicts of interest
> that is ordinarily required under rule 23(e) before securing the
> court's approval as fair.

21   *Id.*  In other words, "[t]he district court's approval order must show not only that it has explored

22   the *Churchill* factors comprehensively, but also that the settlement is not the product of collusion

23   among the negotiating parties."  *Id.* at 947 (citation and internal modifications omitted).

24   A.    Class Settlement

25   The Court finds that the *Churchill* factors strongly support final approval of the settlement.

26   In particular, the case was vigorously litigated, and there were substantial litigation risks to both

27   sides.  For example, Plaintiffs contend that their case was based on a "novel" theory for imposing

28   liability, which were challenged by Defendant's two motions to dismiss (although neither were

3

United States District Court
For the Northern District of California

1    decided upon by the Court). Immediately prior to the original mediation session with Judge

2    Wagner, two district court decisions came out that suggested Plaintiffs' case should have been

3    subject to the exclusive enforcement jurisdiction or primary jurisdiction of the IRS. Mot. at 10-11.

4    Defendant in turn faced the possibility of increased liability if the litigation had continued, as 26

5    U.S.C. § 6511 imposes a three-year period to file an amended tax return. If the three-year period

6    had passed before resolution of the case, Class Members would not have been able to recover their

7    lost deductions from the IRS, and would have instead had to seek compensation from Defendant.

8         In addition, the benefits conferred by the settlement to the class supports final approval.

9    While the cash amount being paid by Defendant to the class is not high, Defendant has issued

10   revised Forms 1098 and agrees to continue reporting negative amortization on Forms 1098 (absent

11   contrary guidance). *See* Mot. at 7; Settlement Agreement at 2.05. This injunctive relief will

12   confer actual benefits to the class that have substantial value, and which can be reasonably

13   calculated. Furthermore, there is no requirement that Class Members "opt in" to the settlement,

14   and thus no risk that any unclaimed funds will revert back to Defendant.

15        Also supporting final approval is the very positive class response to the settlement. Of the

16   19,255[1] notices sent out by the class administrator, there have been only 25 requests for exclusion

17   from the settlement (an approximately .13% opt-out rate). *See* Docket No. 72 (10/7/15 Robin

18   Dec.), Exh. A; Docket No. 73 (individual opt-out letter); Docket No. 79 at 10. The class

19   administrator received only two objections, both of which have since been withdrawn. *See*

20   10/7/15 Robin Dec., Exh. B; Docket No. 74; Docket No. 76.

21        Finally, there is no evidence of collusion per *In re Bluetooth*. There is no arrangement for

22   funds to revert back to Defendant, as Class Members are not required to opt in the settlement, and

23   no suggestion that class counsel is receiving money that could have gone to Class Members

24   instead. Judge Wagner reports that he informed the parties "that there would not be any

25   discussions regarding attorney's fees, or class incentive awards, until all settlement terms

26   regarding the relief to be afforded to the class were agreed upon," and that "[t]his process was

27   _____

28   [1] Of these notices, 390 were undeliverable, and an additional 77 notices were re-mailed on
     September 11, 2015. Docket No. 67-7 (9/11/15 Robin Dec.), Exh. A.

4

United States District Court
For the Northern District of California

1  followed." Wagner Dec. at ¶ 7.  Given the substantial litigation risks, the substantial benefits

2  conferred to the class, and the very positive response by the class, the Court will grant final

3  approval of the class settlement.

4  B.   Award of Attorney's Fees

5      Class counsel seeks $425,000 in attorney's fees and costs.  "[I]n common fund cases, the

6  'benchmark' award is 25 percent of the recovery obtained."  *Vizcaino v. Microsoft Corp.*, 290 F.3d

7  1043, 1047 (9th Cir. 2002).  Here, the total value of the settlement is $20,076,665, including

8  $19,465,585 in estimated tax benefits, $556,080 in $35.00 cash payments to each class member to

9  defray costs of filing amended tax returns, and $55,000 in class administration costs.  Mot. at 18.

10  Class counsel's fees and costs request of $425,000 is approximately 2.12% of the total amount,

11  well below the 25% benchmark.  Based on the common fund approach, the request is fair.

12      The Court also finds that the request is fair under the lodestar approach.  The Court has

13  reviewed class counsel's time records and billing reports, in which class counsel reports

14  $440,163.50 in fees and costs for work up to September 13, 2015.  Docket No. 67-1 (Vendler

15  Dec.) at ¶ 22, Exh. A; Docket No. 67-4 (Brown Dec.) at ¶ 26.  The Court will grant Plaintiffs'

16  request for an award of attorney's fees and costs in the amount of $425,000.

17  C.   Motion for Incentive Award

18      Finally, Plaintiffs request a $7,500 incentive award, or $3,750 award to each of the named

19  Plaintiffs.  Mot. at 19.  "It is well-established in this circuit that named plaintiffs in a class action

20  are eligible for reasonable incentive payments, also known as service awards."  *Harris v. Vector*

21  *Mktg. Corp.*, Case No. Case No. C-08-5198-EMC, 2012 U.S. Dist. LEXIS 13797, at *18 (N.D.

22  Cal. Feb. 6, 2012) (citation omitted).  As this Court has recognized, "[s]everal courts in this

23  District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that,

24  as a general matter, $5,000 is a reasonable amount."  *Id.* at *20.

25      Here, the named Plaintiffs spent time attempting to resolve the matter with Defendant

26  before litigation, securing qualified counsel, conferring with counsel to help formulate the

27  complaint, participating in strategy and reviewing major pleadings, and participating in the

28  mediation.  Vendler Dec. at ¶ 34.  The Court will award the requested incentive award of $7,500

United States District Court
For the Northern District of California

1  ($3,750 to each named Plaintiff).

2  ## IV.   CONCLUSION

3  For the reasons explained above and on the record at the final approval hearing, the Court

4  grants final approval to the proposed class action settlement.  The Court also grants class counsel

5  $425,000 in attorney's fees and costs.  Finally, the Court grants the request for $7,500 in incentive

6  awards the named plaintiffs.

7  The case is dismissed with prejudice and without costs to any party, other than as specified

8  in the settlement agreement and this order.  Upon entry of this order, Plaintiffs and the settlement

9  class members who have not opted out of the settlement shall be deemed to have released the

10  "Released Parties" of the "Released Claims" (as defined in the settlement agreement).

11  Without affecting the finality of this judgment in any way, the Court retains jurisdiction

12  over this settlement and all Parties hereto for the purpose of construing, enforcing, or

13  administering the settlement.

14  The Court instructs the Clerk of the Court to enter judgment in accordance with this

15  opinion.

16  This order disposes of Docket No. 67.

17

18  **IT IS SO ORDERED**.

19

20  Dated: December 7, 2015

21

22  _____
    EDWARD M. CHEN
    United States District Judge

23

24

25

26

27

28

6